**Waldemar P. THOMSON**

v.

**The UNITED STATES (two cases).**

**Nos. 206–61, 174–65.**

United States Court of Claims.

May 10, 1968.

Waldemar P. Thomson, pro se. Jerrell Babb, Los Angeles, Cal., of counsel.

Herbert Pittle, Washington, D. C., with whom was Asst. Atty. Gen. Clyde O. Martz, for defendant.

## OPINION

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

PER CURIAM:

These cases were referred to Trial Commissioner C. Murray Bernhardt with directions to make findings of fact and recommendations for conclusions of law under the order of reference and Rules 47(c) and 57(a). The commissioner has done so in an opinion and report filed on September 13, 1967. Exceptions to the commissioner's opinion, findings and recommended conclusion of law were filed by plaintiff and the case has been submitted to the court on the briefs of the parties without oral argument. Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, plaintiff is entitled to recover in case No. 206–61 in the sum of $5,880 and judgment is entered for plaintiff in that amount in that case. Plaintiff is not entitled to recover in case No. 174–65 and the petition is dismissed in that case.

## OPINION OF COMMISSIONER

BERNHARDT, Commissioner:

### Case No. 206–61

1. On March 18, 1966, the court entered judgment in favor of plaintiff on the issue of liability in Case No. 206–61 (Thomson v. United States, 357 F.2d 683, 174 Ct.Cl. 780 (1966), and remanded it to the commissioner to determine damages pursuant to Rule 47(c). At page 692 of 357 F.2d, at page 795 of its opinion the court held:

Plaintiff is entitled to recover as damages for the defendant's breach of contract the amount stipulated in his second Bid for Services, less any appropriate reductions. [citations]. Judgment is entered to that effect. The amount of recovery will be determined under Rule 47(c). We cannot now tell from the record, but appropriate offsets might include incidental costs of performance which Mr. Thomson may have saved, as well as sums which he may have earned or

with reasonable diligence could have earned from other employment after his discharge. These and other offsets, if proven by the defendant [citations], should be taken into consideration in determining the proper amount of recovery.

2. Plaintiff's second contract for appraisal services was to have been completed within 95 days. Had he not been terminated August 8, 1959, it is reasonable to conclude from the record and the plaintiff's admissions at trial that he would have finished his appraisal and filed his report by August 22, 1959, 15 days earlier than the estimated time for doing so. Although there was a scarcity of appraisers at relevant times in the general area, and plaintiff testified that he would not have accepted other work as an appraiser after the termination of his contract because he felt obligated to maintain himself available exclusively for resuming work under the contract in suit if and when the Government ordered him to do so, and no other appraisal work was offered to him nor did he refuse or seek any, the Government did not establish that, in the brief period between the August 8, 1959, termination and the August 22, 1959, constructive completion date, there was a reasonable likelihood that plaintiff could have become gainfully employed as an appraiser in order to mitigate his losses resulting from termination of his contract.

██ 3. Plaintiff is not entitled to recover contract per diem for any period beyond August 22, 1959, for the reason that where an appraiser contracts with the Government to perform specified appraisal services for an estimated period of time required to complete the appraisal and file a report at a stipulated per diem compensation rate, he is not entitled to recover for more than the time actually or constructively spent in completing the contract, reduced further by any incidental expenses which termination saved him from incurring.

██ 4. Plaintiff is entitled to recover contract per diem at the rate of $75 per day for 80 days from June 2, 1959, through August 22, 1959, diminished by $120 as the sole appropriate reduction representing incidental costs of performance as to stenographic services which he was obviated from using during that period because of the termination. Plaintiff is entitled to recover the net amount of $5,880 as damages for breach of contract in Case No. 206–61.

### Case No. 174–65

██ 5. Plaintiff, an experienced appraiser, customarily was paid $125 per day for appraisal services rendered away from his residence in Los Angeles. He was induced to enter into the two appraisal contracts in suit at the rate of $75 per day through the representation by the United States Attorney's office that $75 per day was the most they could pay him. Because of this alleged misrepresentation he demands reformation of the two contracts in suit to pay him at the rate of $125 per day instead of the contract rate of $75. The United States Attorney's office had paid other appraisers from $50 to $150 per day for their services, depending on the nature and location of the property to be appraised, the competence and experience of the appraiser, the type of appraisal, and whether the appraisal involved absence from the appraiser's office location. $75 per day was a standard rate at that time and place to be paid to appraisers for the appraisal of farmlands comparable to those involved here. That was the rate fixed in the contracts awarded by the United States Attorney's office to two other appraisers in 1958 to perform the same appraisals which the plaintiff contracted to perform. The plaintiff was engaged to perform the appraisals when one of the two original appraisers was terminated because of a disqualifying legal conflict. The record does not afford a reliable comparison between plaintiff and the two original appraisers, or between plaintiff and other appraisers who were compensated at a higher rate by the United States Attor-

ney's office for other appraisals, with respect to their relative competence, experience and worth. It is concluded that the representation by the United States Attorney's office to the plaintiff that $75 per day was the maximum per diem they could pay him for the appraisals in question was not a misstatement of a material fact, but was merely that office's concept of a fair price for the services solicited and consistent with prevailing contract rates for comparable services. If plaintiff was not satisfied with the rate of compensation tendered him his recourse was to decline the employment.

■ 6. The plaintiff's additional contention that the United States Attorney's office misrepresented the estimated time it would take to perform the appraisals and prepare reports by fixing it at 155 days for both contracts (one was for appraising the fee, mineral and water rights in property taken, and the other to appraise flight easements over adjoining property), whereas a reasonable time estimate was 188 days, is without substance. He demands payment at $125 per day for 188 days, less appropriate offsets such as payments received and expenses saved by termination. Plaintiff's contracts estimated a total of 155 days through the filing of a report, and his constructive performance time was 140 days. Appraiser Miles' contracts provided an estimated 165 days. Plaintiff's claim to entitlement to be paid for 188 days because of the Government's misrepresentation founders on the fact that he performed—or would have performed if he had not been terminated—in 15 days less time than his contracts called for. He has not proved that 188 days was a reasonable time for performance, or that the Government misrepresented the time estimate by fixing it at 155 days. Moreover, plaintiff has not proved that the estimate of 155 days originated with the Government.

■ 7. The plaintiff finally contends that he was entitled to be paid at the rate of $125 per day for an estimat-

ed 85 days he alleges he was deprived of employment in attending conferences and trial sessions as an expert witness. There are several reasons why this is unsound. Despite the plaintiff's testimony that he intentionally kept himself unemployed and available to discharge his contract obligations, the record shows that he did have certain conflicting assignments in August, September and October, 1959, which would have prevented him from performing the contracts in suit on those occasions if he had been ordered to. Again, the condemnation actions to which the appraisal contracts were related came to conference and trial at various times from August 1959 to July 1964, and it is not credible that plaintiff would have remained voluntarily unemployed for that entire period awaiting a call to duty. Moreover, there is no legal propriety to plaintiff's theory. Where an appraiser contracts with the Government to perform specified appraisals in an estimated period of days at a stipulated rate of per diem compensation, plus the same rate of compensation for subsequent services in appearing at pretrial conferences and trial sessions as an expert witness to support his appraisal, there is no enforceable agreement or custom that the Government will call upon him for such subsequent services, for other factors might intervene to preclude the need for such services, such as settlement of the related case, or rendition of an appraisal report unsatisfactory to the Government. In such a circumstance where the contract of employment is terminated prior to completion of the appraisal report, the appraiser is not entitled to damages for breach of contract for that portion of prospective compensation attributable to the possibility that he might have been called to attend pretrial conferences and trial sessions as an expert witness, even though an appraiser who is engaged to render an appraisal report in connection with a prospective condemnation trial is usually called as a witness at such trial and paid therefor. The obligation of the Govern-

ment to pay for such subsequent services is incurred only when, as and if the appraiser renders them.

█ 8. In rendering his Statements of Services to the Government for payments purposes in each of the two contracts the plaintiff certified that the bills based on a total of 116 days at $75 per day were "true and correct and fair." He accepted the sum of $4,500 for 60 days at the rate of $75 per day under the first contract, and this constitutes an accord and satisfaction for that portion of the present claim, since it has not been established that the Government misrepresented either the proper rate of per diem or the correct estimate of time.

9. Plaintiff is not entitled to recover under Case No. 174–65.